MDNC 7/96

FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983
in the United States District Court for the Middle District of North Carolina

Peter M. Ebel
_____
_____
_____

(Enter above full name of plaintiff or plaintiffs)

v.

N. Allred
Tracy Johns
Debra Gonzalez
Edward D. Gray
_____

(Enter above full name of defendant or defendants)

FILED

NOV 3 0 2011

DENNIS P. IAVARONE, CLE
US DISTRICT COURT, ED
BY _____ DEP CLK

5:11-CT-3245-BO

I. Previous law suits

   A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment? Yes ( ) No (X)

   B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit describe the additional lawsuits on another piece of paper, using the same outline.)

      1. Parties to preview lawsuit:
         Plaintiffs: _____

         Defendants: _____

      2. Court (if federal court, name the district; if state court, name the county): _____

      3. Docket number: _____
      4. Name of judge assigned to case: _____
      5. Disposition (for example, was the case dismissed? appealed? is it still pending?)
         _____

      6. Approximate date of filing lawsuit: _____

II. Previous *in forma pauperis* lawsuits

   A. While incarcerated or detained in any facility, how many previous lawsuits have you filed in any federal court in which you were allowed to proceed *in forma pauperis* (without prepayment of fees)? None
      1. Name the court and docket number for each: _____
         _____

B. How many of these cases were dismissed under 28 U.S.C. § 1915(d) on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted?
_____

1. Name the court and docket number for each: _____
_____
_____

II. Place of present confinement and complete mailing address: FCI Butner, P.O. Box 1000, Butner NC 27509-1000

(It is your responsibility to notify the court of any address change.)

A. Did you present the facts relating to your complaint to the Inmate Grievance Commission or any other available administrative remedy procedure? Yes ( ) No ( )
B. If your answer is Yes:
1. What steps did you take? _____
_____

2. What was the result? _____
_____

3. Did you appeal any adverse decision to the highest level possible in the administrative procedure? Yes ( ) No ( )
If yes, what was the result? _____
_____

C. If your answer to A is no, explain why not: According to the Fourth Circuit Court, Inmate Grievance/Administrative Remedy is not a procedure to which civil detainees are elligible or entitled.

III. Parties

A. Plaintiff(s)

Name of plaintiff: Peter M. Ebel 22891-112
Current address: FCI Butner, PO Box 1000, Butner NC 27509-1000

(please provide the name and address for any additional plaintiffs on an attached sheet)

B. Defendant(s)  (A person must be identified in this subsection B in order to be considered and served as a defendant.)

Name of defendant: N. Allred, Unit Secretary - Wake Forest Unit
Position: _____
Place of employment: _____
Current address: _____

Additional defendant(s) (provide name, position, place of employment, and current address for each)
Tracy Johns, Warden, FCI Butner, Butner NC 27509
Debra Gonzalez, Associate Warden, FCI Butner, Butner NC 27509
Edward D. Gray, US Attorney, Room 800, 310 New Bern Avenue, Raleigh NC 27601

-2-

IV. Statement of Claim

On Wednesday, May 11, 2011, at 0915, Tracy Johns, Warden, and Debra Gonzalez, Assistant Warden, supervised a shakedown of Maryland Unit of FCI Butner, which was being conducted by various member of the prison corrections staff, including N. Allred, Unit Secretary of Wake Forest Unit.

Shakedowns are normally performed on a Tuesday or Thursday at 0830 or immediately after lunch. The above shakedown was intended to be punitive (rather than merely of a search nature), in response to a Maryland Unit shakedown the previous week which was brief and "light". Following that shakedown, however, one or more detainees complained that locks were not properly refitted to lockers, and confiscation forms were not issued for confiscated items as is required by BOP policy.

Hearing of these complaints, Johns and/or Gonzalez directed that a punitive shakedown be conducted of Maryland Unit. Accordingly, the shakedown commenced at 0915 on May 11, 2011, and did not conclude until after lunch, almost four hours later (a typical shakedown on Maryland Unit requires two hours). This was the first occasion since I was placed on Maryland Unit in June 2010 that Johns and Gonzalez supervised a shakedown; according to a corrections officer, it was prompted by the detainee complaint that the previous week's "light" shakedown was improperly conducted (i.e., locks not refitted; confiscation forms not issued). The intention was to demonstrate a "real" shakedown which Johns and Gonzalez would supervise; in other words, a punitive shakedown, during which detainee rooms would be exhaustively searched. Such shakedowns violate the Supreme Court's ruling that Maryland Unit's custody and housing of detainees is not to be punitive but civil.

In the course of this shakedown, Allred emptied my locker of legal and evidentiary paperwork, the majority of which comprised a part of my defense in my 4248 case [items specifically cited in the forensic evaluations produced by B. Thibault (SOMP Devens), T. Cunic (Butner) and J. Davis (government ex parte expert witness)]. Included in the defense material, and paperwork generally, confiscated by Allred, and described on the confiscation forms Allred completed, were three manuscripts, notes, and research documents, personal correspondence, evidence of my employment prior to my incarceration, and personal files. The total amount of paperwork removed from the locker is described on the confiscation forms as in excess of 32 inches.

This same paperwork had been inspected and approved for storage in the locker by A. Taylor, Unit Counselor, two weeks prior to the May 11, 2011, shakedown. This same paperwork was shipped with me when I was transferred from FMC Devens to FCI Butner on June 10, 2010, and was inspected and approved by Butner R-and-D staff.

While removing this paperwork, Allred also tore from the inside locker door an official U.S. Army photo and newspaper article describing the death of a 20-year-old serviceman one week after his arrival in Afghanistan. These items were left on the floor. Such items are permitted to be

3

displayed on the inside of locker doors. Removal and defacement of such items demonstrates the punitive nature of not only this shakedown but custody in Maryland Unit generally.

On May 12, 2011, at 0824 hours, I provided a partial inventory of what had been confiscated by Allred in an email to my wife, to be passed on to my attorney.

On May 12, 2011, at 0938 hours, I emailed my wife, directing her to compose a letter to Judge Terrence W. Boyle (before whom I had appeared at a status hearing a week earlier), informing him that my defense paperwork and other materials had been removed in a shakedown. Copies were sent to Edward D. Gray, U.S. Attorney; Property Office, FC Butner; and Case Manager, Maryland Unit, FCI Butner. (This letter is shown in my court docket as Item #40.)

On Friday, May 13, 2011, I was given the opportunity to view the confiscated property in the compound lieutenant's office. The property was contained in a large cardboard box approximately 24" long and 12" wide. I was informed by the property officer that the property was to be given to SIS for inspection. This was the last time I saw the property, nor have my attorney or I have been able to discover chain of custody after the property left SIS.

On May 15 at 0849 hours, I emailed my wife more detailed information for attorney use in respect of the confiscated property and its immediate custody by SIS, which included BOP policy on the production of manuscripts.

On May 20, in an "Inmate Request to Staff" which I handed personally to Captain Smith at 1230 hours, I requested to be informed of the present status of my property, which BOP policy requires of confiscated property. No response was forthcoming.

On May 20, I filed a Motion for Temporary Restraining Order or Preliminary Injunction Pursuant to FRCP 65(a)(b) in respect of the confiscated property (Docket Item #42, entered May 31, 2011).

On July 10, I informed Tracy Johns in writing of my inability to ascertain from Butner staff what the status was of the confiscated property. No reply was forthcoming.

During July and August my attorney attempted to ascertain from Edward Gray who is believed to have custody of the property but was given no information by Gray until August 25 or thereabouts when Gray sent a disk to my attorney, Curtis R. High, which contained a section of manuscript and field data from my employment prior to my incarceration. Both items were designated "Attorney's Eyes Only".

All attempts by High subsequent to August 25 to ascertain from Gray who has possession of the rest of the property proved unsuccessful.

4

V. Relief

The arbitrary and capricious confiscation of evidentiary defense materials denies me my right of defense. The confiscation of three manuscripts denies me my First Amendment rights. Together, my rights guaranteed to me under the Constitution and its Amendments have been grossly infringed.

I am being denied my right of defense not only because evidentiary property has been confiscated, but also because of the ever-present likelihood that any further documentation I may acquire or produce in respect of my defense will similarly be confiscated.

I am being deprived of my First Amendment right to my writing as a professional, internationally recognized author, and my entitlement to same under established BOP policy, because of the ever present likelihood that anything I write will similarly be confiscated.

In respect of the above, I therefore claim the following relief:

*The complete return of all property confiscated on May 11, 2011 in the same condition and order at the time it was confiscated.*

Failing this, I claim:

(1) Working title Piper Chronicles – an approximately 3,500 page handwritten manuscript of autobiographical nature, comprised of eight individual volumes, one draft file, and supporting notes, files, and related documents and research materials; a project that has taken in excess of 7 years work. I claim 2.5 million dollars.

(2) Working title Kanun – a fully complete, computer-typed manuscript of 2 volumes. I claim 1.5 million dollars.

(3) Working title The Killing of Zachary a partial manuscript in handwritten form. I claim 1 million dollars.

For the violation of my Constitutional rights as a result of the confiscation of this and other property on May 11, 2011; for violation of established BOP policy in respect of the production of manuscripts and established BOP policy in respect of the confiscation of inmate/detainee property (for which no differentiation is made according to the same BOP policy); and for the extreme and unnecessary pain and suffering caused me and my wife by a willful, intentionally punitive, arbitrary and capricious act, and all that followed therefrom to this date:

(4) I claim punitive damages of 5 million dollars, irrespective of the return of any or all of the property confiscated on May 11, 2011.

5

Signed this  28th  day of  November , 2011.

Prison No. 22891-112

Peter Martin Ebel

Exhibits Supporting this Claim

1. Confiscation forms signed by N. Allred.
2. Email dated May 12, 2011 0824 hours; initial inventory of confiscated property.
3. Letter dated May 12, 2011 to Judge Boyle (Docket Item 40).
4. Email dated May 15, 2011 0849 hours, including BOP Program Statement and policy in respect of confiscated property.
5. "Inmate Request to Staff" dated May 20, 2011, requesting status of property.
6. Motion for Temporary Restraining Order or Preliminary Injunction Pursuant to FRCP 65(a)(b) dated May 20, 2011 (Docket Item 42).
7. Letter dated July 10, 2011 to Tracy Johns, Warden.
8. Email dated September 23, 2011 from Curtis High, Attorney for Plaintiff, citing inability to ascertain whereabouts or possession of property.
9. Excerpts from forensic evaluations by B. Thibault, T. Cunic, and J. Davis where manuscripts and other documents are cited.
10. The Plaintiff's publishing history.
11. The Plaintiff's media history.
12. Notice posted in respect of N. Allred's defacing of Plaintiff's personal property.
13. BOP Program Statement: "5. Procedures for Handling Contraband, Section 533.13.
14. BOP Program Statement: "5350.27 Inmate Manuscripts".
15. Email dated January 13, 2009 1401 hours from Adam Walsh Review Panel to Devens correctional staff informing staff of the Panel's determination that Plaintiff is not sexually dangerous and ordering him released to the street. (The Plaintiff should not have been certified.)

6